Good morning, class. Where have you come from? Buffalo Grove High School. How wonderful. Well, we're very honored that you came to watch us. We're very proud of you. Now we have to be on our best behavior. This is not easy. Good morning, good morning. Okay, our second case of the day is 18-3507, and it is Turubchuk v. Southern Illinois Asphalt Company, and it comes to us from the Southern District of Illinois. Because, classes, I'm sure you understand, this court sits with the cases, federal cases, of Illinois, Indiana, and Wisconsin. And good morning, Mr. Eaton. Good morning. Mr. Eaton, can you remember your first case? Yes. May it please the court, good morning. My name is Tim Eaton, and I represent Southern Illinois Asphalt Company, the appellant. Your Honor, this is a somewhat unique case. It certainly is, Mr. Eaton. Yes, and there's a number of issues, but what I want to address is the fact that my client was found by a jury to have violated a negligent misrepresentation count. That was the only count that was before the jury, and they awarded $8 million. That count was largely predicated on the federal rules of evidence, specifically Rule 26, because of an incomplete initial disclosure in the beginning. Mr. Eaton, I have never seen an action for negligent misrepresentation, which is premised on a violation of one of the rules of civil procedure. Couldn't find a case discussing such an action. I'm not certain one exists. Can you help me? I wish I could, Your Honor. We could not find one either. And in fact, the cases that we cited, living designs being one of them, the court had found specifically that there was no duty of care when you're acting as an officer of the court. In fact, that's exactly what this court held in the Groppo v. Travelers Insurance Company, where there was a purported class action against travelers because they said they failed to respond to an interrogatory correctly listing the umbrella coverage and that somehow all these people were defrauded by travelers. And this court was very clear in saying that as an officer of the court, our duty is to the court. It doesn't create a duty of care to opposing counsel or to the opposing party. And so what the district court did here was find that there is a duty of care to the opposing party, which she said we breached. And the basis for that breach was an incomplete disclosure under Rule 26. Mr. Eaton, I think you've hit on an important point there, that the duty of care may be in some way informed by Rule 60. Yes. What we really are dealing with here is the underlying cause of action is premised on state law, fraud by negligent misrepresentation. Yes. In Illinois, has that cause of action ever been used to attack an earlier judgment, either of an Illinois court or a federal court? Your Honor, not that we could find. Misrepresentation. Not that we could find. And the closest to it was the decision of this court in the Roper v. Travelers where the negligence claim was founded upon the failure to respond to an interrogatory in state court. It did not involve federal court procedures. We've looked at other cases, like I mentioned the Living Designs case out of the Ninth Circuit, where in that case it was a failure to disclose certain documents. And again, the court said there was no duty of care to opposing counsel. So there's nothing under Illinois law which you're correct, the negligent misrepresentation is a cause of action recognized by state law, and they're trying to apply a federal rule of procedure as the predicate for the duty and for the negligence. How would your argument change if rather than in a Rule 26 disclosure Green wrote a letter or signed an affidavit certifying that there were no other insurance policies? I understand that there are no cases that specifically allow a separate cause of action based on a Rule 26 violation, but there are a lot regarding fraud in the inducement of a settlement agreement. So what I've been wondering is does it matter that the fraud or negligence occurred in the context of this Rule 26 disclosure rather than some other kind of statement or document? Your Honor, it certainly mattered to the district court because she found as a matter of public policy that an incomplete disclosure under Rule 26 was negligence per se, basically, but negligence is a matter of law. And because it was Rule 26, she also found that there was justifiable reliance without any inquiry as to whether that reliance was reasonable. She just based it on the rule itself. To answer your question specifically, if this were some sort of communication, let's just say out of court, what are the policy limits of this insurance policy? And it was misstated. I think that gets actually closer to the Roppo case where initially there had been an answer to a request by opposing counsel, how much insurance do you have? And he had failed to disclose the umbrella policy, and then later it was actually done through a written interrogatory. The court didn't seem to draw a distinction there because, again, the duty, they held that the attorney's duty under Illinois law is to his client, not to opposing counsel. So I don't believe it would make much of a difference in terms of my argument if it had been a written communication, but I can say very safely in terms of this argument in this case, it meant a lot to the district court when she found that Rule 26 was violated because it was incomplete, according to her, and she found negligence as a matter of law, and then also found that it was a breach as a matter of law, and that there was justifiable reliance as a matter of law. So all that was left when this went to trial, which was about a day and a half, was the issue in the negligent misrepresentation, the element that says whether or not the person who made the so-called false statement, which, by the way, she found an incomplete Rule 26 disclosure was a false statement, was the person's intent to induce the other party to act upon the false statement and damages. And there was only one live witness, and that was this Mr. Al-Ahari, who was the plaintiff's former attorney. So you were allowed to cross-examine Al-Ahari regarding his personal financial stake in the outcome of the case? No, we were not allowed to. In fact, moreover, Your Honor, which I think was an egregious error by the district court, we were not allowed to cross-examine Mr. Al-Ahari on the fact that he resigned from the Washington Bar in lieu of disbarment. And specifically, and this is in the record, he had said that he admitted, Mr. Al-Ahari admitted that the Washington State Bar Association could prove by a clear preponderance of the evidence the alleged violation of the rules of professional conduct, and proof of such violation would suffice to result in disbarment. And specifically, the resignation is based on conduct involving dishonesty. When we wanted to have a cross-examination of the only witness, the reason that motion limine the plaintiff's file was granted was because the district court said it would be too prejudicial. He was the only witness who testified as to the intent of our client's counsel. He was the only witness who testified as to the value of the case, and we could not cross-examine him on the fact that he admitted a violation of dishonesty in his home state where he was a lawyer. And that was another grievous error. The other thing on the intent to induce the other party to act upon a false statement, Mr. Al-Ahari testified at trial that he believed Mr. Green, our lawyer, induced him to act upon a false statement based upon what Mr. Green said to him. Now, we objected on the basis of foundation speculation. How would he know what was in Mr. Green's head? And by the way, we filed a motion of limine, which was granted. We renewed our objection that it was speculation and there was no foundation for him to know what Mr. Green intended, and that was overruled at trial and the jury heard it. So the only issue on intent was Mr. Al-Ahari's speculation that Mr. Green did it to induce. Also, I want to address the issue of justifiable reliance. And again, the court was clearly colored by the fact that this was a Rule 26 violation in her opinion. She said any lawyer should be able to rely justifiably in a negligence count on what's put in a Rule 26 disclosure. Now, the law is under state law, which is the cause of action before the court, is that there has to be reasonable reliance. And for several reasons, this was not reasonable. Number one, we're talking about an insurance policy. I understand that. And we disclosed based on the joint venture policy. But there was never any question by Mr. Al-Ahari, well, what about the construction companies? Do they have assets? That could have satisfied an $8 million case that he valued that, except he just said, oh, okay, you only have a million in insurance, that's it. And that's all he asked. I think had we been able to put before this jury, which we were not, that number one, Mr. Green was hired by the joint venture, that was not allowed, excuse me, by the joint venture insurance company, that he entered an appearance before this phone conversation on behalf of the joint venture, that he had the policy in front of him which would cover this as a joint venture, the jury heard none of that because she found as a matter of law that that was irrelevant because he had made an incomplete disclosure. Now, Mr. Green testified that it was his normal policy that he would update information that he gave in the initial disclosure, such as other insurance when it came to discovery questions. Now, I don't know and I don't think I have to whether a trial judge would find that a violation of Rule 26, perhaps, because it's a duty to investigate. And he said he didn't. I mean, there's no question about that. But Rule 26 said at that time that after you make an initial disclosure, that you are to supplement it at regular intervals if you need to correct something or supplement the information. He said that was his policy. Now, the rule changed. Now, it says in a timely manner. But the rule, when it existed when Mr. Green's contact was involved, was what he said he did. When I get discovery, I look to see if there's additional policies and I will produce it. And by the way, this jury was also instructed as a matter of law that there was no joint venture, even though there was a joint venture agreement, even though the letter demand to my client for the policy was addressed as a joint venture. Yes, sir. Mr. Eaton? Yes. Let's talk about the arguments about error, because there's a number of arguments that the district court aired here as a matter of procedure, as a matter of evidence. Is it appellant's position that these are linked, meaning there was almost a funnel or a relationship between and among the errors that led us to her directing the verdict with regard to four of the six elements? Or are these unrelated erroneous allegations that in aggregate or cumulatively should result in a vacating remit? Your Honor, I believe they're all related. And they're all related to what she found was an incomplete Rule 26 initial disclosure, which she found to be a false statement. And then she held that as a matter of law that there was a breach of the duty of care, if you find a duty of care, which she found here. She found that there was a breach because he didn't follow the rule in terms of investigating further. She also found that there was a justifiable reliance as a matter of law, even though under state law that requires it to be reasonable because it was a Rule 26 rule and the policy behind it is to benefit the litigants involved in the process and the duty to the court. So this funnel, as you put it, which is absolutely correct, was premised on Rule 26. And I don't think the Enabling Act, when they gave the Supreme Court the power to have federal rules of procedure, was ever intended that that would become a predicate under state law for negligence because that alleged incomplete Rule 26 disclosure resulted in an $8 million sanction. This jury really didn't have much to decide. As you also know from the record, we wanted to put in evidence of the value of the case. We were not allowed to. Former District Court Judge Pat Murphy had been disclosed as a witness and she struck his testimony basically saying that he didn't give enough facts as to how he arrived at his opinion as to the value, which he found to be about $300,000, based upon his experience as a District Court Judge for 15 years and as a practicing lawyer. Yet she found it was fine for a disbarred attorney from Washington to give his value. And what was odd is that she required that there be a non-retained expert disclosed to give the value of what he thought the value was when he had this phone conversation. So Al Ahari was a non-retained expert to give the value of what he thought and what his opinion would have been at the time. So I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you. And Mr. Book, do you remember your first argument? I do. You do. I have a funny story about it, but unfortunately I don't think I could use my time in that regard. You survived. I did. Barely. May it please the Court, Mr. Eaton, as you mentioned, my name is Jamie Book. Everybody, please don't. I'm with the law firm of Roster and Book from St. Louis, and I've had the opportunity to represent the Drubchuck family now for five years in a case that has its roots reaching back 14 years to 2005 in a tragic single-vehicle accident in 2005 in I-24 in Southern Illinois, which unfortunately took the life of one of the Drubchuck family and left several other ones with serious injuries. Are there any cases allowing a separate cause of action for a discovery violation in a prior action? As far as I can tell, the remedy for the violation can be found in Rule 37 sanctions, and I suppose you could have moved under Rule 60B for some relief, although there are time limits there. But what is your best authority for bringing a new case based on a discovery violation in a closed case? Sure, Your Honor, and there's a couple different ways I'd answer that question. The first is I would draw an analogy between these types of cases, and for example, a trucking case. A what case? A trucking case, for example. Trucking, trucking, sorry. We're not using the Rule 26 violation as an independent cause of action. We weren't in the district court under federal question jurisdiction. It was diversity jurisdiction under an Illinois claim for negligent misrepresentation. In a trucking case, for example, there are federal motor carrier safety regulations, and in a trucking case, we may sue the trucking company alleging that the owner of that trucking company should have fired the driver many years before this accident happened. And as evidence in support thereof of that negligent retention claim, we may look at violations of federal motor carrier safety regulations. Those federal motor safety carrier regulations do not in and of themselves create a cause of action. They're not in federal court based upon a federal cause of action. They are evidence to support the negligence portion of that negligent retention claim. And I think it's a reasonable analogy here the same way. Were the defendant negligent in their responsibilities under Rule 26, and if so, what evidence do we have of that? Well, that's the rule itself, the language contained in that rule, the commentary associated with that rule, and the duty that's established by Rule 26G1 to make a reasonable inquiry, and the certification then that is included in Rule 26G1 that that answer is complete and correct. We're telling the other party that the answer is complete and correct under the rule because an investigation has been made, a reasonable inquiry. But how could it be reasonable as a matter of law to rely on Rule 26, disclosure that Al Iyari had not yet received? Had Al Iyari conducted any research into the assets of SAIC and ETS to see if they could cover a judgment beyond any insurance policy? I mean, it's very unusual for a lawyer to settle a case on the basis of initial disclosures without some due diligence. And I really have some concerns about the court finding reasonable reliance as a matter of law. And again, I would go back, Your Honor, to the fact that the initial disclosures under Rule 26 are mandatory, and I think this is a significant case in this regard in that there is not a lot of case law out there that talks about what violations of Rule 26 mean to the litigants in cases. And there's an opportunity here for this court to do so, to tell the parties and the attorneys who come before our federal district courts that Rule 26 and its requirements are meant to be taken seriously and that opponents, opposing parties, can rely, should be able to rely on what the litigants put in those Rule 26 disclosures because that's the point of the disclosure. That's why they're supposed to act as court-ordered interrogatories. I believe that's why there is the duty established in Rule 26G1 of a reasonable inquiry and a certification that those answers are complete and correct. Mr. Bach, I think the question we have to look at, though, is whether state law provides a remedy for that violation, and that, I think, was the thrust of my colleague's question, and you really didn't answer it. Is there any Illinois case previous to this one where Illinois has sustained a cause of action for fraud by negligent misrepresentation in an earlier case? There is, and I don't have the citation off the top of my head. Judge Jandel cited it in one of her pretrial conferences, a case against an insurance company for failing to disclose the entire limits of the insurance amount, and I apologize. I can get the court that case from her pretrial rulings hearing. And what did the court do in that case? It allowed the case to move forward, and the reasonable value of the case was the settlement value at the time that improper disclosure was made. I believe it was against State Farm. You know, Greene's letter accepting the settlement offer contains a CC to one Catherine Kaczynski at Liberty Mutual. Why didn't that put Al Iyari and his clients on notice that other insurance companies might be involved? Look, didn't he have a duty to investigate further once that notation appeared? And again, why would his reliance on Rule 26 initial disclosures be reasonable in light of that notation? Your Honor, I think based upon the representations made by Mr. Greene in the phone call to Mr. Al Iyari that there was, in fact, only $1 million in insurance, and Mr. Al Iyari saying, well, I'll need confirmation of that in writing. Mr. Greene then responded, I'll do you one better. I will send you my initial disclosures early. Therefore, you'll have it in that approved document. I think when you take all that together as totality, it was reasonable for Al Iyari to rely on that initial disclosure and the representations made by Greene in that regard. What's your best evidence that Greene violated Rule 26 for the purpose of inducing the plaintiffs to settle for a lower amount? It seems that Al Iyari's opinion testimony on this point was improper. To me, it does. What other evidence was there of Greene's intent? I mean, if Greene believed there was a joint venture and that the individual policies excluded joint ventures, where would his intent be to mislead the plaintiffs? Well, Your Honor, first off, I believe that intent could be inferred from the evidence by the jury under the federal jury instructions applicable to this case, 111 and 1.12. But again, I think it goes back to the context of that conversation. The intent could simply be to resolve the case, to get the case over with now versus many years later after protracted litigation and potential discovery in the assets. It gets the case done by protecting the individual assets of both of his clients who were named, again, individually in the lawsuit itself. Joint venture, that word, never actually appears in the 2007 lawsuit. They are always named as individual defendants. So I believe that the totality of the circumstances in that regard, again, could lend itself to a reasonable belief by the jury and by the court that there was an intent to induce Aliari and the plaintiffs to resolve this case for only the million dollars. You see, the individual insurance policies here had exclusions for damages caused by a joint venture. Correct. Of course, the duty to indemnify is more narrow than the duty to defend. So if there was a joint venture, why was it a violation as a matter of law, as a matter of law for Green to fail to disclose policies that contain these exclusions? And, Your Honor, that's because of the way that the lawsuit was framed. If we look at the Clarendon case, which we cited in our brief, remember the 2007 lawsuit was actually served, I'm sorry, filed against Southern Illinois Asphalt Company and E.T. Simmons Company individually. There was no allegation of joint venture made. And when an insurance company receives a lawsuit such as that, they don't go to their client necessarily and say, well, were you a joint venture or not? They have to look at the actual language in the suit. And so, for example, in the Clarendon case, it states, in determining whether an insurer is obligated to defend its insured, we compare the allegations of the underlying complaint to the relevant provisions of the insurance policy. And in that case, looking at the complaint and Clarendon's policy, it's clear that a potential for coverage exists. Clarendon is named insured. BGK was sued directly in the underlying suits. So if you look at, and that gets back to why there was a violation under Rule 26 as well, because we have to be based upon how the actual lawsuit was filed and drafted. It was not filed against a joint venture, so it would, based upon the four corners of that document, implicate a duty to at least defend, if not indemnify for the time being, and implicate the duty to disclose these policies under Rule 26A1A4 in the initial disclosures because of the way that lawsuit was framed, regardless of the subjective thoughts going on of the individual parties, whether it be ETS, SIAC, or Al Iyari. And then, therefore, Al Iyari can take that information and review it in making an informed decision as to whether or not to settle for the million or if these policies could potentially be applicable. And also, again, Your Honor, looking back at the language of Rule 26A1A4, it's a broad rule in terms of what policies should be disclosed. It does not say that the policies should be disclosed that will be applicable to satisfy all or part of any judgment. It says any policy, which may, may be applicable to satisfy all or part of any judgment. And I think, again, when you take a look at how the 2007 lawsuit was actually framed, the policies at issue, and then the obligations under Rule 26A1A4, you add those together and it's clear that Green did have an obligation to produce those policies because these defendants were named individually, such that then Al Iyari can make his own decision with regard to it. And where's Al Iyari's duty? Raid, liberty, mutual? I apologize, Your Honor, I missed your question. I think I missed it, too. Where does Al Iyari's duty fit in here? His duty to his clients? Raid, the liberty, mutual? The cc'd or liberty, mutual? I do understand that liberty, I think it's significant, the liberty, mutual being cc'd on that policy, I think is, I'll answer your question in one second, but is significant in that it establishes that Green knew at that time that there were other insurance policies out there and didn't disclose them. But beyond that, I think Al Iyari's duty to his clients to make a reasonable decision as to whether to settle or not, based upon everything that Green had told him, and not noticing the one cc on that particular email, I mean it's a single email, the single cc that he just simply missed. When you say told him, we have to take Al Iyari's word. You do have to take Al Iyari's word for it, but I do believe also the timing of the disclosures is significant in that they were disclosed well in advance of when they would be. The Rule 16 conference hadn't even occurred yet. If you look at Al Iyari's testimony from the trial, for example, he commented that he was concerned that his were late because these came so early and then realized, no, the Rule 16 conference hadn't even occurred and they were not yet due. So I think, again, if you take the context of the situation and everything that was said and done, it gets back to why Al Iyari could rely, in fact should be able to rely on those disclosures under federal law. I mean, Rule 26, I'm sorry, G1 does establish that duty, does establish that standard of care. We're told that they're to be complete and correct, and I think as a lawyer practicing in federal court, I should be able to rely, I should be able to trust what my opposing counsel is telling me and be able to rely on those initial disclosures, not to my detriment. And the concern here is this, for me, and why I think it's a significant decision, is if there is no ability to pursue a negligent misrepresentation claim based upon a violation of Rule 26 that is almost admitted, then there's no remedy for anybody who finds themselves in these situations, which is concerning. I mean, Green admitted in his deposition when I took it that it was his practice to have like a two-step procedure. One, I just disclose only that policy under which I was retained, and then two, I'd wait for an interrogatory and I'd go back and do all those things that I would normally do to find all the rest of the policies. Further to that question, in the 2007 case, was there that subsequent written discovery that included any kind of question about insurers? There was no subsequent discovery whatsoever. The initial disclosures were made, the demand was made that day as well, or there might be a date difference, and then it was accepted 30 days later. Now, significantly though, there was an extended period of time, I believe about nine months, between the approving the settlement, because it was a wrongful death and minor settlement, minors were involved as well. And during that entire period of time, there was never any supplementation by Green whatsoever with regard to any other potential policies. But getting back to my point, Green admitted that he treated interrogatories different than initial disclosures. And the commentary to the 1993 amendments to Rule 26 are explicit, that no, there is no difference. These are to function as the equivalent of court approved interrogatories. So there shouldn't be any real question here that Green did violate Rule 26 when he made the incomplete disclosure, and yet we may be presented now with a situation where there could be no potential remedy for that, for my clients who are the ones who are harmed. Getting to the point of the trial, because my time is running out, yes, there was only one live witness at trial, Mr. Aldari. First off, I don't believe that Judge Yandel abused her discretion with regard to prohibiting the cross-examination of him on surrendering his license. They were free to cross-examine him on his qualifications, background, experience handling personal injury cases. They didn't take that upon themselves at trial. The cross-examination of Aldari at trial consists of about seven questions. I think it's seven pages of testimony. Second, they had the opportunity to present a defense at the trial on this matter. They had multiple attempts to present appropriate expert testimony on the reasonable settlement value of the case at the time that the nondisclosure was made. And frankly, they failed to provide any factual support for their expert in that regard. Now, Green was deposed. None of these questions were ever asked of him by any of the counsel for SIAC or ETS. Green was deposed and did not reach out to Mr. Green or to any of the insurance companies. They were never designated as non-retained experts. Their depositions were never taken asking what they would have done. And it left Judge Murphy in a very awkward position in that he didn't have the factual support necessary to be able to support his opinions, beyond which the fact that there were the concerns with the fact that he hadn't reviewed the motions and limine rulings in that regard and taken those into consideration with regard to his opinions. So it's not fair to say that there was only one side presented at trial. While that may be true, they were given the opportunity to present their side as well. And unfortunately, they weren't able to provide the necessary information for their retained expert in order to obtain that information. I mean, the fact of the matter is they could have simply designated Mr. Green as a non-retained expert. They were given ample opportunity to do so and asked what would you have done had this come up. They tried to do that later at trial because there was one question in his deposition where that was asked. But SIAC never designated him as a non-retained expert and Judge Yandel rightfully said, well, that's an opinion question. You can't ask that. So in conclusion, as I mentioned at the beginning, I believe this is a significant case. It is a case of first impression. I wish I had more closed cases on point to help the court out. But it's a case where my clients were harmed because all the available information that is required by our federal rules of civil procedure were not provided to them. And yet they now find themselves in a position where they may have a remedy for that. And that it could potentially encourage litigants to stick their head in the sand, not make those inquiries necessary under Rule 26 and allow this type of behavior to continue. And I just ask the court to respectfully consider those concerns in rendering its decision. And we ask the court to affirm the district court's judgment. Thank you for your time. Thank you very much, Mr. Heaton. Thank you, Your Honors. Judge Ropo, I would like to answer your question specifically. In the Ropo case versus Travelers, it states that in Illinois, an attorney generally owes a duty of care only to his client and not third parties. And that gives the site of an Illinois case. This general rule is meant to protect the attorney-client relationship. Since an attorney must represent his clients with zeal and undivided loyalty in adversarial matters, he cannot have fiduciary responsibilities to third parties which may interfere with his duty to his client and leave him vulnerable to liability. This was in response to the plaintiff's argument that a defense attorney's duty as an officer of the court translates into a duty to the plaintiff to use a reasonable care, and that was rejected under Illinois law. And that's what this court found. So I think that answers the question as to what Illinois law does in terms of any type of duty of care. Secondly, Judge Ropo, you had mentioned the copy, Deliberty Mutual, in the letter that was sent on June 15, 2007 by Mr. Green. If Mr. Green was trying to induce them to settle solely based on his disclosure, why would there be a copy, Deliberty Mutual, in two places? It was cc'd on the first page and then the back page under signature. In bold, it had Liberty Mutual and Bituminous Insurance, who he was hired by. If he's trying to hide that, why would he include it in a letter sent to the plaintiff's attorney on June 15? The other thing, Judge Brennan, with respect to the timing, this was a 30-day demand. We had 30 days to respond. There was no discovery. As a matter of fact, counsel says, well, there was a duty after there had been this disclosure to update. We sent a check for a million dollars on June 26, 2007, pursuant to their demand in order to settle this case, even though the case wasn't dismissed until 2008 and there wasn't a release until 2009. So is there a duty, if there's even the duty of care to the other side, even under Rule 26, is a lawyer really going to be continuing to investigate additional policies when he's already sent a million dollars in settlement of the case? And that's what Green said in his deposition. It's settled. I stopped looking at it. That was also subject to motion to eliminate and the judge did not allow that in. I think it goes to the reasonableness of his behavior if we're going to be talking about negligence as a matter of law. So that 30-day time limit really did mean a lot. And also, with respect to damages, and this is a point I will close on, there is no evidence in this record that those insurance policies, if they've been disclosed, covered this incident, even if there was no joint venture. We tried to examine Mr. Alahari during his cross-examination, Mr. Alahari during his time on the witness stand, and said, did you read those policies? Does it cover objection? And the court said, you can't get into that. So we don't know whether if they disclosed those policies they would be covered or not. We know there's joint venture exclusion, so if there's a joint venture they would not have, but would they have covered it otherwise? No one knows. And she thought that was irrelevant. So we attempted to try to find out, how are they damaged if we don't know if those policies apply or not? So respectfully, we believe that we are entitled to a judgment as a matter of law because they failed to prove their cause of action and there was no duty of care. And at the very least, we would ask for a new trial. Thank you very much. Thank you both very much. And class, you were fortunate enough to be here to see two really experienced, superb lawyers. So you came at a good time. And where have you come from? Oh, the same. Wonderful. Now, the court is going to take a less than five minute break.